CHARLES A. JONES, ESQ.
KELLY MCINERNEY, ESQ.
JONES LAW FIRM
9585 Prototype Court, Ste. B
Reno, Nevada 89521
Telephone: (775) 853-6440; Fax: (775) 853-6445
*Attorneys for Plaintiffs*

F. MCCLURE WALLACE, ESQ
PATRICK MILLSAP, ESQ
WALLACE & MILLSAP LLC
510 West Plumb Lane, Suite A
Reno, Nevada 89509
Telephone: (775) 683-9599; Fax (775) 683-9597
*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ADAM SCHUVEILLER and LINDSEY SHAFFER, as individuals, and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>KUHN PHYSICAL THERAPY, LLC, a Nevada Limited Liability Company<br><br>Defendant. | CASE NO.:  3:17-cv-00331-MMD-WGC<br><br>**JOINT MOTION FOR SETTLEMENT APPROVAL** |

## TABLE OF CONTENTS

Table of Contents ................................................................................................ i

Table of Authorities.......................................................................................... ii-v

I.      INTRODUCTION ........................................................................................ 1

II.     BACKGROUND ........................................................................................... 3

III.    TERMS OF THE SETTLEMENT AGREEMENT......................................... 4

     A.     Settlement Amount and Release............................................................. 4

     B.     Distribution.......................................................................................... 5

IV.     ANALYSIS .................................................................................................... 6

     A.     The Proposed Settlement is Fair and Reasonable.................................... 7

          1.     The Settlement is the Product of Arms-Length, Non-Collusive Negotiations 8

          2.     The Proposed Settlement does not Grant Preferential Treatment ................. 8

          3.     The Proposed Settlement is Well Within the Range of Approval................. 9

     B.     Collective Action Treatment Remains Appropriate ................................. 10

     C.     The Requested Fee Award is Reasonable................................................ 12

          1.     Time and Labor Required............................................................ 17

          2.     The Novelty and Difficulty of the Questions and The Skill Requisite to Perform the Legal Services Properly............................................................ 17

          3.     The Preclusion of Employment by the Attorney Due to Acceptance of the Case ................................................................................................ 17

          4.     The Customary Fee and Whether the Fee is Fixed or Contingent............... 17

          5.     Time Limitations Imposed by the Client or the Circumstances ................... 18

          6.     The Amount Involved and the Results Obtained......................................... 19

          7.     The Experience, Reputation, and Ability of the Attorney ........................... 19

          8.     The Undesirability of the Case .................................................................... 19

          9.     The Nature and Length of the Professional Relationship with the Client.... 19

          10.    Awards in Similar Cases................................................................. 19

V.      CONCLUSION .............................................................................................. 20

# TABLE OF AUTHORITIES

## SUPREME COURT CASES

*Blanchard v. Bergerson*
(1989) 489 U.S. 87, 96 .......................................................................... 15, 18

*Blum v. Stenson*
(1984) 465 U.S. 886, 898-900 ............................................................... 15, 16

*Cabrales v. Cty. of Los Angeles*
(1989) 490 U.S. 1087 .................................................................................. 13

*Garcia v. San Antonio Metro. Transit Auth.*
(1985) 469 U.S. 528 ..................................................................................... 13

*Hensley v. Echerhart*
(1983) 461 U.S. 424, 430, 435 ................................................................ 15, 16

*Kerr v. Screen Extras Guild, Inc.*
(1976) 425 U.S. 951 ...................................................................................... 15

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*
(1985) 478 U.S. 546, 564-65 ........................................................................ 15

## FEDERAL CASES

*Ballen v. City of Redmond*
(9th Cir. 2006) 466 F.3d 736, 746 ........................................................... 14, 15

*Bonetti v. Embarq Mgmt. Co.*
(M.D. Fla. 2009) 2009 U.S. Dist. Lexis 68075 ............................................. 12

*Bonilla v. Las Vegas Cigar Co.*
(D. Nev. 1999) 61 F. Supp.2d 1129, 1136...................................................... 6

*Bonnette v. California Health & Welfare Agency*
(9th Cir. 1983) 704 F.2d 1465, 1473 ............................................................. 13

*Cabrales v. Cty. of Los Angeles*
(9th Cir. 1988) 864 F.2d 1454, 1464-65 ........................................................ 13

*Cabrales v. Cty. of Los Angeles*
(9th Cir. 1989) 886 F.2s 235.......................................................................... 13

*Camacho v. Bridgeport Fin., Inc.*
(9th Cir. 2008) 523 F.3d 973, 979-80, 982 .................................................... 14

*Carbonell v. INS*
(9th Cir. 2005) 429 F.3d 894, 899 ................................................................. 12

*Caudle v. Bristow Optical Co., Inc.*
(9th Cir. 2000) 224 F.3d 1014, 1028 ............................................................. 15

*Clark v. City of Los Angeles*
(9th Cir. 1986) 803 F.2d 987, 992 ............................................................. 15

*Corder v. Gates*
(9th Cir. 1991) 947 F.2d 374, 377-78 ....................................................... 17

*Costa v. Commissioner of Social Sec. Admin.*
(9th Cir. 2012) 690 F.3d 1132, 1135 ........................................................ 14

*Cotton v. Hinton*
(5th Cir. 1977) 559 F.2d 1326, 1331 .......................................................... 7

*Dang v. Cross*
(9th Cir. 2005) 422 F.3d 800, 813 ............................................................ 16

*Davis v. Westgate Planet Hollywood Las Vegas*
(D. Nev. 2009) 2009 WL 102735 ............................................................. 11

*Flitton v. Primary Residential Mortg., Inc.*
(10th Cir. 2010) 614 F.3d 1173, 1178 ...................................................... 13

*Gamble v. Boyd Gaming Corp.*
(D. Nev. 2015) 2015 WL 4874276 ........................................................... 10

*Gamble v. Boyd Gaming Corp.*
(D. Nev. Feb. 23, 2017) 2017 WL 721244 .................................................. 7

*Garcia v. Tyson Foods, Inc.*
(10th Cir. 2014) 770 F.3d 1300, 1311-12 ................................................. 13

*Gonzalez v. City of Maywood*
(9th Cir. 2013) 729 F.3d 1196, 1202, 1209 ......................................... 13, 14

*Goudie v. Cable Commc'ns, Inc.*
(D. Or.  Jan. 2, 2009) 2009 WL 88336 ...................................................... 7

*Grayson v. K Mart Corp.*
(11th Cir. 1996) 79 F.3d 1096, ............................................................... 10

*In re Tableware Antitrust Litig.*
(N.D. Cal. 2007) 484 F. Supp.2d 1078-79 ................................................. 8

*Johnson v. Georgia Highway Exp., Inc.*
(5th Cir. 1974) 488 F.2d 714, 717-19 ............................................. 15, 16, 18

*Jordan v. Multnomah County*
(9th Cir. 1987) 815 F.2d 1258, 1262 ........................................................ 16

*Kerr v. Screen Extras Guild, Inc.*
(9th Cir. 1975) 526 F.2d 67 .................................................................... 15

*Laffey v. Northwest Airlines*
(D.C. Cir. 1984) 746 F.2d 4, 11 .............................................................. 13

*Lane v. Capital Acquisitions & Mgmt. Co.*
(S.D. Fla. 2008) 554 F. Supp.2d 1345, 1348-49 ........................................ 16

*Lynn's Food Store, Inv. v. United States*
(11th Cir. 1982) 679 F.2d 1350, 1355 ............................................................. 7

*Maddrix v. Dize*
(4th Cir. 1946) 153 F.2d 274 ...................................................................... 13

*Montanez v. Simon*
(7th Cir. 2014) 755 F.3d 533 ...................................................................... 16

*O'Brien v. Ed Donnelly Enterprises*
(6th Cir. 2009) 575 F.3d 567, 585 ................................................................ 10

*Pfizer, Inc. v. Lord*
(8th Cir. 1972) 456 F.2d 532, 543 ................................................................. 7

*Posner v. The Showroom Inc.*
(6th Cir. 1985) 762 F.2d 1010 ..................................................................... 13

*Reed v. County of Orange*
(C.D. Cal. 2010) 266 F.R.D. 446, 462 ........................................................... 11

*Reindeau et al v. Carson Partners LP*
(D. AZ 2013) 2013 WL 6728141 ................................................................... 12

*Rodriguez v. West Publishing Corp.*
(9th Cir. 2009) 563 F.3d 948, 965 ................................................................ 8

*Seminiano v. Xyris Enter., Inc.*
(9th Cir. 2015) 602 Fed. Appx. 682, 683 ....................................................... 6

*Senne v. Kansas City Royals Baseball Corp.*
(N.D. Cal. 2016) 315 F.R.D. 523, 585 .......................................................... 10

*United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*
(6th Cir. 1984) 732 F.2d 495, 502-03 ........................................................... 13

*United States v. $28,000*
(9th Cir. 2015) 802 F.3d 1100 ................................................................ 16, 17

*United States v. $186,416.00 in U.S. Currency*
(9th Cir. 2011) 642 F.3d 735, 755 ................................................................ 18

*Van Gerwen v. Guar. Mut. Life Co.*
(9th Cir. 2000) 214 F.3d 1041, 1048 ............................................................. 18

## STATE CASES

*Graham v. Daimler Chrysler Corp.*
(2004) 34 Cal. 4th 553, 580 ........................................................................ 18

## **STATUTES**

29 United States Code §207 ............................................................................*passim*

29 United States Code §216 ............................................................................*passim*

## **RULES**

Federal Rules of Civil Procedure Rule 23 ..................................................... passim

Pursuant to 29 U.S.C. § 216(c), Plaintiffs Adam Schuveiller and Lindsey Shaffer, on behalf of themselves and the other nine (9) Opt-In Plaintiffs who timely opted-in to this case[1] (Hereinafter "Plaintiffs") and Defendant Kuhn Physical Therapy, LLC, d/b/a Premier Physical Therapy & Sports Performance ("Defendant"), jointly bring this Motion for Settlement Approval ("Joint Motion"). This Motion is unopposed. Further, in light of the fact that all eleven of the Plaintiffs have both opted in to this action and individualy signed the Settlement Agreement, there is no need for notice or an objection period. The sole purpose of this Motion is to obtain the Court's approval of this settlement, grant the agreed-upon amount of attorney's fees and costs, and dismiss this case.

# I.    INTRODUCTION

This action involves claims by Plaintiffs alleging unpaid wages and overtime compensation under the Fair Labor Standards Act ("FLSA"). Specifially, Plaintiffs allege that Defendant failed to pay them overtime equal to one and one-half times their regular rate of pay for all hours worked in excess of forty hours per week in violation of 29 U.S.C. §207(a)(1). [ECF No. 1]. Plaintiffs also allege that Defendant failed to include time the Plaintiffs spent receiving/reviewing and responding to texts, phone calls and e-mails ("Off the clock work") sent to them after normal working hours by Defendant in calcualting the amount of overtime due to Plaintiffs. *Id.* Defendant denies the Plaintiffs' allegations. [ECF Nos. 15 & 20].

As a result of ongoing, good-faith, and arms-length settlement negotiations, the Parties have arrived at a mutually agreeable Settlement Agreement and Release of Claims ("Settlement Agreement"), which is attached as "**Exhibit 1.**"[2]    As set forth in more detail below, under the terms of this Settlement Agreement, the Plaintiffs will **be paid for 100%** of the unpaid overtime

---

[1] The nine other individuals who timely opted-in to this case after receiving Notice of this action pursuant to ECF No. 24 are: Sean Patrick A. Wall, Erik V. Tom, Norma Martinez-Quintana, Kelley Cullen, Chris Misanik, Jesus Quintero, Jr., Leticia Ayala Lemus, Brandon Jara-Martinez, and Cassandra Gonzalez.

[2] Unless otherwise noted, all terms herein shall have the same meaning and definition as in the Parties' proposed Settlement Agreement. Further, all Exhibits referenced herein are attached to the Declaration of Charles A. Jones.

and liquidated damages they allege they are entitled to by and through their Complaint.[3] See, 29 U.S.C. §216(b). Consistent with the Settlement Agreement, the Parties have lodged a proposed Settlement Approval Order requesting that the Court (i) grant approval of the proposed Settlement, (ii) certify the Collective Action for settlement purposes only, and (iii) dismiss this action with prejudice.   *See* [Proposed] Settlement Approval Order, submitted concurrently herewith.  This Joint Motion, as well as the justification for the already agreed upon fees and costs to be paid to Plaintiffs' Counsel, is supported by the Declaration of Charles Jones, submitted concurrently herewith.

As explained below, the Parties believe the proposed Settlement Agreement merits approval in light of the fact that the Plaintiffs will be paid for 100% of the unpaid overtime and liquidated damages they allege they are entitled to.  As a result of this Agreement, there is no valid reason for the Parties to continue to litigate this case.  Further enhancing the settlement is the fact that *after* the Defendant agreed to pay Plaintiffs 100% of the alleged unpaid overtime and an equal amount in liquidated damages, the Defendant separately agreed to pay Plaintiffs' Counsel attorney's fees and costs for the work incurred in prosecuting this case through the date of settlement.  In addition, as set forth in **Exhibit 1**, all eleven Plaintiffs in this case have signed the Settlement Agreement and agreed to its provisions.

Given the nature of the dispute and the uncertainties inherent in any collective action litigation, the proposed Settlement Agreement eliminates the risk that the action would be dismissed without any benefit or relief to the Plaintiffs.  Moreover, as discussed herein, the proposed Settlement Agreement and corresponding amounts paid to each Plaintiff represent a result which is clearly well within the range of possible approval.  There is no doubt that this settlement is fair, reasonable, and adequate, and in the best interests of the Plaintiffs.  Accordingly, the Parties submit that approval of the Settlement Agreement is warranted; that the

---

[3] This and all references in this Joint Motion for Settlement Approval to the consideration provided for through the Settlement Agreement reached among the Parties is not in any way an admission of any wrongdoing by the Defendant with regard to the Plaintiffs' allegations in this case.

Court should certify this Action for settlement purposes only; and that the Court should dismiss this action with prejudice.

## II.    BACKGROUND

On May 25, 2017, Plaintiffs filed this Collective Action, seeking relief for unpaid overtime compensation under 29 U.S.C. § 207. [ECF No. 1]. 29 U.S.C. §207 (a)(1) requires employers to pay their non-exempt or hourly employees *one and one-half times* their regular rate of pay for all hours worked in excess of 40 hours per week.   In this case, Plaintiffs' allege that Defendant only paid straight time wages for any hours worked over forty hours per week and did not pay the additional .5 overtime premium rate for any hours worked over 40 hours per week.   Thus, the Plaintiffs allege they were not paid one and one-half times their regular rate of pay for overtime hours worked and instead were only paid "straight time."   For example, a Plaintiff working 41 hours in a week and earning $10.00 an hour was paid $410 for the week (41 hours x $10.00 per hour = $410) when the employee should have been paid $415 for that week (40 hours x $10.00 per hour = $400 for straight time wages; $10.00 per hour x 1.5 = $15.00 an hour any hours worked over 40 hours in a week; 1 hour of overtime x $15.00 = $15.00).

On June 8, 2017, Plaintiffs filed their Motion to Facilitate Notice of this Action Pursuant to 29 U.S.C. § 216(b).   [ECF. No. 7].   Following extensive discussions between the Parties, on August 30, 2017, the Parties stipulated to conditional certification of this action and also agreed upon a form of notice that was sent to the members of the two collective action groups. [ECF No. 23].   The next day, the Court approved the Parties' stipulation, conditionally certified this case as a collective action under 29 U.S.C. §216(b), and ordered that notice be mailed to all persons employed by Defendant who fell within the following collective action groups certified by the Court: "all persons who, at any time between May 25, 2014 through judgment, are or were employed by Defendant in the State of Nevada as (1) PT Techs or PT Aides; and (2) Senior PT Techs or Senior PT Aides."   [ECF No. 24].   Following this Order, Notice was mailed to all persons falling within the definition certified by the Court and nine additional individuals opted-in to this case as Opt-In Plaintiffs.

After the Opt-In period expired, the Parties began discovery and exchanged voluminous amounts of information relating to Defendant's pay practices, the amount of hours worked by the Plaintiffs each week and their corresponding amount of pay for each week worked. Specifically, for each of the eleven Plaintiffs involved in this case Defendant provided the following information during the relevant time period: (1) the hourly rates of pay for each Plaintiff during the relevant time period; (2) the bonus amounts paid to each Plaintiff during the relevant time period; (3) records of hours worked for each Plaintiff during the relevant time period; (4) the dates of employment for each Plaintiff during the relevant time period; (5) reporting of any off the clock work performed by each Plaintiff; and (6) pay stubs reflecting the number of hours worked during each semi-monthly pay period, the amounts of any bonuses paid during that pay period, and each Plaintiff's hourly rate of pay.[4] Following the production and analysis of this information, the Parties entered into lengthy arms-length settlement negotiations. As a result of their negotiations, the Parties were able to reach a resolution of all claims, subject to Court approval, on the terms memorialized in the Settlement Agreement.

## III.    TERMS OF THE SETTLEMENT AGREEMENT

In the interest of brevity, the Parties will provide an overview of the key terms of the Settlement Agreement in this Joint Motion. The complete terms of the settlement are set forth in the attached Settlement Agreement and Release. **Exhibit. 1**.

### A.    Settlement Amount and Release

Defendant has agreed to pay a total of Sixty-Eight Thousand, Two Hundred Eighty-Seven Dollars and Fifty-Two Cents ($68,287.52), less applicable withholdings for the portion of the settlement allocated to wages, to the Plaintiffs to resolve this action. In exchange, the Plaintiffs have, *inter alia*, agreed to a release of their claims against the Defendant. The release is limited to claims that relate to the allegations in the Complaint, and events occurring before the date of final approval of the Settlement Agreement by this Court. As discussed in depth below, the amount

---

[4] In addition to this information, the Defendant also provided voluminous documents discoverable in this case.

paid to each Plaintiff represents 100% of each Plaintiff's alleged unpaid overtime/wages as well as an equal payment of liquidated damages.

After the Parties had agreed upon, and each Plaintiff accepted the offer made to them by Defendant, the Parties negotiated the amount paid to Plaintiffs' counsel for his work on this case through the date of the settlement. Specifically, Defendant has agreed to pay Plaintiffs' counsel Forty-One Thousand, Seven Hundred Twelve Dollars and Forty-Eight Cents ($41,712.48) for the hours spent litigating this case and for costs incurred. As set forth in the Jones Declaration, this sum was arrived at by multiplying the number of hours worked by Plaintiffs' counsel by his normal hourly rate of pay and is fair and reasonable in view of the work performed by Plaintiffs' Counsel in this matter and the result achieved for the Plaintiffs.

**B.    Distribution**

In order to determine the exact amount of unpaid wages, unpaid overtime and the corresponding amount of liquidated damages allegedly owed to each of the Plaintiffs, the Parties analyzed the information reflected above (hourly rates of pay, records of hours worked per week, and pay stubs reflecting amounts actually paid) and determined the exact amount of unpaid overtime hours worked by each of the Plaintiffs per week. The Parties then used each of the Plaintiff's hourly rates of pay and any bonuses paid during each work week to determine the amount of alleged unpaid overtime owed to each of the Plaintiffs at a rate of one and one-half times each Plaintiff's regular rate of pay. In light of the fact that Defendant paid straight time wages for all overtime hours worked, each of the Plaintiffs is only owed the half time (.5) premium rate of pay for all overtime hours worked. Based on this analysis, the parties allocated the following amounts to each of the Plaintiffs in this action which reflect a 100% recovery for all alleged overtime hours worked, plus an additional equal amount for liquidated damages as provided in 29 U.S.C. §216(b), which states, in relevant part:

> "Any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."

Below is a chart reflecting the exact amount that will be paid to each Plaintiff, excluding applicable withholdings for the amount of the settlement allocated to wages:

| KUHN PHYSICAL THERAPY DAMAGES ALLOCATION | | | |
|---|---|---|---|
| PLAINTIFF | AMOUNT OF UNPAID OVERTIME AND WAGES OWED | LIQUIDATED DAMAGES | TOTAL SETTLEMENT AMOUNT |
| Adam Schuveiller | $11,077.79 | $ 11,077.79 | $    22,155.58 |
| Eric Tom | $  8,454.23 | $  8,454.23 | $    16,908.46 |
| Sean-Patrick Wall | $  4,925.27 | $  4,925.27 | $      9,850.54 |
| Lindsey Shaffer | $  7,095.38 | $  7,095.38 | $    14,190.76 |
| Leticia Ayala | $     870.14 | $     870.14 | $      1,740.28 |
| Chris Misank | $     879.25 | $     879.25 | $      1,758.50 |
| Kelley Cullen | $     276.89 | $     276.89 | $         553.78 |
| Norma Martinez-Quintana | $     118.07 | $     118.07 | $         236.14 |
| Cassandra Gonzalez | $     257.81 | $     257.81 | $         515.62 |
| Jesus Quintero, Jr. | $     137.73 | $     137.73 | $         275.46 |
| Brandon Jara-Martinez | $       51.20 | $       51.20 | $         102.40 |
| TOTALS | $34,143.76 | $ 34,143.76 | $    68,287.52 |

One aspect of this settlement that is unique to collective action settlements, other than the fact that the Plaintiffs will recover 100% of the amounts alleged in the Complaint, is the fact that <u>all</u> of the eleven Plaintiffs in this action have approved this settlement and signed the Settlement Agreement.   The Parties have expressly agreed that the foregoing distribution is reasonable. **Exhibit 1.**

**IV.    ANALYSIS**

Claims under FLSA are generally non-waivable and, therefore, cannot be settled without the supervision of either the Secretary of Labor or a District Court. *Seminiano v. Xyris Enter., Inc.*, 602 Fed. Appx. 682, 683 (9th Cir. 2015). "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." *Gamble v. Boyd Gaming Corp.*, 2017 WL 721244, at *4 (D. Nev. Feb. 23, 2017) (citing *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d.1129, 1136 (D. Nev. 1999) ("The § 216(b) requirement that Plaintiffs consent to the suit serves essentially the same due process concerns that certification serves in a Rule 23 action."). "Thus,

the approval of settlements of FLSA claims is a separate, but related, analysis from the approval of settlements of class action claims." *Id.*

However, "the FLSA does not expressly set forth criteria for courts to consider in determining whether an FLSA settlement should be approved, nor has the Ninth Circuit established any particular criteria." *Id.* Courts in the Ninth Circuit have generally applied the Eleventh Circuit's widely-followed standard set forth in *Lynn's Food Stores, Inc. v. United States* 679 F.2d 1350 (11th Cir. 1982). The touchstone is whether the proposed settlement constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355.

In evaluating a proposed FLSA settlement, "the court's obligation is not to act as caretaker but as gatekeeper; it must ensure that private FLSA settlements are appropriate given the FLSA's purposes and that such settlements do not undermine the Act's purposes." *Goudie v. Cable Commc'ns, Inc.*, 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009). This Court has observed that the majority of Rule 23's fairness factors are "instructive and relevant" to the inquiry under the FLSA. *Gamble*, 2017 WL 721244, at *4. These factors include:

> "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Id.*

**A.    The Proposed Settlement is Fair and Reasonable**

In evaluating the terms of this settlement, this Court should be guided foremost by the general principle that settlements of class and collective actions are favored. By their very nature, because of the uncertainties of outcome, difficulties of proof, and lengthy duration, class and collective actions readily lend themselves to compromise. *Pfizer, Inc. v. Lord*, 456 F.2d 532, 543 (8th Cir. 1972); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[p]articularly in class action suits, there is an overriding public interest in favor of settlement"). In short, "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations,

has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval," then the proposed settlement should be approved. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). As set forth below, the settlement achieved in this case represents an excellent result for the Plaintiffs due to the fact that they will receive 100% of the alleged unpaid overtime plus an equal amount in liquidated damages.

### *1. The Settlement is the Product of Arms-Length, Non-Collusive Negotiations*

Here, the proposed settlement is the result of extensive and hard-fought negotiations between aggressive and capable advocates on both sides throughout the course of this litigation. Counsel for Plaintiffs are experienced attorneys with significant class and collective action litigation experience. Jones Decl. ¶¶2-7. Based upon their familiarity with the factual and legal issues of this litigation, Counsel for the Parties were able to negotiate a fair settlement at arms-length based upon a number of factors, including the benefits to the Plaintiffs, the costs and risks of trial, and the desire for a resolution by compromise rather than prolonged, costly, and uncertain litigation. Given the terms of the Parties' settlement, continuing this litigation would <u>only</u> result in the unnecessary generation of additional attorney's fees and costs for both sides.

The Settlement Agreement is not the product of any coercion or overreaching. The Plaintiffs have been represented throughout this dispute by capable counsel with extensive experience in class and collective action matters who have vigorously represented the Plaintiffs' interests in this matter. Under these circumstances, the Settlement should be afforded a presumption of fairness. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Thus, the settlement negotiations were conducted at arms-length, and without any suggestion of undue influence. In addition, each of the Plaintiffs have approved and agreed to the Settlement. **Exhibit 1.**

### *2.     The Proposed Settlement Does Not Grant Preferential Treatment*

Moreover, the proposed settlement does not improperly grant preferential treatment to any individuals or segments of the collective action. No enhancement or incentive awards are provided to the named Plaintiffs under the Settlement Agreement. The distribution of the Settlement Amount is instead proportional and based on the alleged amount of unapid overtime, wages and liquidated damages allegedly owed to each Plaintiff.

### 3.    *The Proposed Settlement Is Well Within the Range of Approval*

There can be no question that the settlement is well within the range of approval in light of the fact that each Plaintiff will be paid the amount allegedly owed to them in unpaid wages, overtime, and liquidated damages. Further enhancing the fairness of the settlement is the fact that the Defendant has agreed to pay the attorney's fees and costs for Plaintiffs' counsel separately. This means that even though all of the Plaintiffs agreed to pay attorney's fees from any recovery they received in this action, the Plaintiffs will actually keep 100% of the settlement amounts paid to them, less applicable tax withholdings.

Further, the terms of the proposed settlement are substantively and procedurally fair. Although the Plaintiffs maintain the validity and strength of their claims, there are no guarantees in collective action cases such as this and both Parties are saving significant time, costs, and attorney's fees associated with the continued litigation of this action. In short, the Parties have determined that it is desirable and in their best interests to settle this action. The undersigned Counsel also confirms that sufficient investigation and discovery (the exchange of records reflecting the number of hours worked, pay rates, bonuses paid, pay stubs and amounts actually paid per work week) was conducted in this action prior to entering into settlement negotiations. Jones Decl. ¶2.

In addition, because this action was brought under the FLSA, the Settlement Agreement is not binding on any similarly-situated individuals who did not "opt-in." *See* 29 U.S.C. § 216(b) ("no employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is brought."). Further, this matter was already conditionally certified and notice was circulated to potential opt-in

Plaintiffs prior to entering into settlement negotiations. In addition, each of the Plaintiffs both voluntarily joined this matter and expressly authorized the Settlement Agreement. **Exhibit 1**. Thus, a period for objections and/or an exclusion/opt-out procedure is unnecessary before entry of Approval of the Settlement Agreement.

Most importantly, Plaintiffs will receive meaningful and negotiated consideration in exchange for a limited release of their claims with prejudice. Given the complexities of this case, the legal issues, potential offsets, along with the uncertainties of proof and appeal, the Parties, and their counsel, agree that the proposed settlement is well within the range of possible approval and has no obvious deficiencies.

### B.    Collective Action Treatment Remains Appropriate

Even where, as here, the Parties settle a collective action, the Court is required to make a finding that collective action status is appropriate. *Gamble,* supra, 2015 WL 4874276 at *3. A collective action under the FLSA is certified at two stages. At the first stage or "notice stage," "the court determines whether a collective action should be certified for the purpose of sending notice to potential class members." *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 585 (N.D. Cal. 2016); Ex. 2, 11/17/17 Order Denying Motion to Decertify Class at second and more rigourous stage in *Amador v. Bully's Sports Bar & Grill*, Case No. CV-00022-HDM-VPC. In this case, the Court granted conditional certification of this case on August 31, 2017. [ECF No. 24.]

For purposes of certification of FLSA collective actions, "similar" does not mean "identical." *Grayson v. K Mart Corp.*, 79 F.3d 1096 (11th Cir. 1996). A named plaintiff may show that class plaintiffs are similarly situated where their claims are "unified by common theories of defendants' stautory violation, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien v. Ed Donnelly Enterprises*, 575 F.3d 567, 585 (6th Cir. 2009); Ex. 2 at p. 4:10-20. In determining whether collective active treatment remains appropriate, courts consider: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and

procedural considerations." *Davis v. Westgate Planet Hollywood Las Vegas,* 2009 WL 102735, *8 (D.Nev.2009).

Here, the Plaintiffs contend that factual and employment settings demonstrate they are similarly situated and the collective action treatment for settlement purposes remains appropriate. For example, all Plaintiffs were classified by Defendant as hourly paid, non-exempt employees, and thus are entitled to overtime for all hours worked in excess of 40 hours per week calculated at one and one half-times their regular rate of pay.  See, 29 U.S.C. §207.  All of the Plaintiffs challenge Defendant's uniform policy and practice of paying overtime to its PT Techs / Aides and Senior PT Techs / Aides at only one time the employee's regular rate of pay, as opposed to one and one half-times the employee's regular rate of pay.  Similarly, all of the Plaintiffs work pursuant to the same job description, respectively, and all hold the same or similar job duties.  See, ECF No. 7.  Further, the pay stubs and pay roll records for the Plaintiffs demonstrate that they were only paid straight time for their overtime hours worked and were not paid the additional .5 premium overtime rate for any overtime hours worked.  *Id.*  As such, the Plaintiffs allege they are similarly situated for purposes of collective action status.

Regarding the second factor (various defenses available to the defendant with respect to the individual Plaintiffs), the Parties agree that a substantial percentage of defenses available to Defendant would not be individualized defenses among the Plaintiffs.  Instead, some of the defenses available to rebut Plaintiffs' claims – including, but not limited to, that Defendant did not authorize or permit the overtime hours worked – are the same for each Plaintiff.  Regarding the third factor, fairness and procedural considerations, courts consider the primary objectives of a collective action: (1) to lower plaintiffs' costs through the pooling of resources, and (2) to limit the controversy to one proceeding so as to efficiently resolve common issues of law and fact without prejudice to either party.  *Reed v. County of Orange,* 266 F.R.D. 446, 462 (C.D. Cal. 2010).  In this case, the Plaintiffs received the benefit of conditional collective certification and seek continued collective action treatment for settlement purposes.  Further, the interests of judicial

JOINT MOTION FOR SETTLEMENT APPROVAL

economy and the purposes of the FLSA in general are promoted.    Based on the above, continued collective action treatment for settlement purposes is appropriate.

### C.    The Requested Fee Award is Reasonable

Unlike many class/collective action settlements where the parties agree upon a gross settlement figure and counsel then seeks a percentage of the gross settlement amount in attorney's fees and costs (referred to as "common fund" settlements), in this case the Parties negotiated the amount of attorney's fees and costs paid to Plaintiffs' counsel ($41,712.48) by the Defendant *after* the Parties agreed upon the amount of settlement for the Plaintiffs' claims. This procedure results in an increase in the amount recovered by the individual Plaintiffs because fees and costs are paid separately by the Defendant and not deducted from the Plaintiffs' recovery. As a result, this Court need not further scrutinize the amount of fees awarded to Plaintiffs as they were both agreed upon by the Parties and approved by the Plaintiffs themselves. *Bonetti v. Embarq Mgmt. Co.,* 2009 U.S. Dist. LEXIS 68075 at *16 (M.D. Fla. 2009) [rejecting need for scrutiny of amount of attorney's fees if underlying claims were negotiated prior to negotiation of amount for attorneys' fees]. Nonetheless, in order to absolve any concerns that this Court might have, the Parties set forth the applicable law concerning awards of attorney's fees in FLSA cases such as this to confirm that the fees sought are both warranted and reasonable.

The FLSA provides that the Court, in an action under the act, "*shall,* in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. §216(b).  In contrast to many other fee-shifting statutes where an award of attorneys' fees to the prevailing party is discretionary, an award of attorneys' fees incurred at the trial court level by the prevailing party is mandatory under the FLSA. *See e.g., Reindeau et al, v. Carson Partners LP,* 2013 WL 6728141 (D. AZ 2013).  Here, Plaintiffs are the prevailing party for FLSA purposes based on the fact that the Parties have entered into a legally enforceable Settlement Agreement. *Carbonell v. INS,* 429 F.3d 894, 899 (9th Cir.2005) ("[W]e have also found that a litigant prevailed when he entered into a legally

enforceable settlement agreement."); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

The purpose of the FLSA attorney fees provision is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984). The mandatory nature of an award of attorneys' fees and costs in FLSA actions such as this is consistent with the express purpose of the FLSA which is to rectify and eliminate "labor conditions detrimental to the maintenance of the minimum standard of living" for workers. *Id.* Congress' mandate that all successful FLSA plaintiffs are entitled to an award of attorney's fees and cost was intended as an incentive for private litigants to act as "private attorneys general" and vindicate the FLSA rights in the courts. *Id.*; *see also Laffey v. Northwest Airlines*, 746 F. 2d 4, 11 (D.C. Cir. 1984).[5]

In determining the amount of attorneys' fees to be awarded in FLSA actions such as this, courts have been instructed not to place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees "encourage[s] the vindication of congressionally identified policies and rights." *United Slate, Tile & Composition Roofers, supra,* 732 F.2d at 503. Consistent with this policy, courts have upheld "substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." *Posner v. The Showroom, Inc.,* 762 F.2d 1010, 1985 WL 13108 at *2 (6th Cir.1985) (unpublished); *Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1311–12 (10th Cir. 2014)[Although jury awarded only 8% of damages sought by plaintiffs, attorney fee award of $3,389,207 was affirmed].[6] In this case, the amount of attorney's fees sought does not

---

[5] Moreover, by shifting the responsibility for a successful plaintiffs' attorney's fees to the employer, "Congress intended that the wronged employee would receive his full wages … without incurring any expense for legal fees or costs." *See Roofers Local 307,* 732 F. 2d at 502 (quoting *Maddrix v. Dize,* 153 F. 2d 274 (4th Cir. 1946)).

[6] See, *Flitton v. Primary Residential Mortg., Inc.,* 614 F.3d 1173, 1178 (10th Cir.2010) [ upholding the district court's decision to award the full amount of fees requested, based on "substantial success," even though the plaintiff obtained only about 1.3% of the damages she had requested]; *Bonnette v. California Health & Welfare Agency,* 704 F.2d 1465, 1473 (9th Cir. 1983) *disapproved of on other grounds by Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S. Ct. 1005, 83 L. Ed. 2d 1016 (1985) [despite $20,000 recovery for plaintiffs, court awarded $100,000 in attorney's fees]; *Cabrales v. Cty. of Los Angeles,* 864 F.2d 1454, 1464–65 (9th Cir. 1988), *cert. granted, judgment*

exceed the total amount paid to the Plaintiffs, and the Plaintiffs will receive far more than "nominal damages" as reflected by the fact that many of the Plaintiffs will recover in excess of $10,000.

As set forth in the Jones Declaration, the amount of attorney's fees agreed upon by the Parties were determined on a lodestar basis by multiplying the number of hours worked by Plaintiffs' counsel by the hourly rate charged by Plaintiffs' counsel. Jones Decl. ¶¶8-9.   In this case, Plaintiffs' counsel spent 68.76 hours prosecuting this case through the date that the Parties negotiated the settlement on behalf of the Plaintiffs.  In addition, Plaintiffs' counsel has spent an additional 12.5 hours communicating with defense counsel regarding the settlement process and researching and drafting this motion and the supporting declaration. *Id.*    However, Plaintiffs' counsel did <u>not</u> include these 12.5 hours in the lodestar calculation.  In arriving at the lodestar amount, the Parties multiplied the number of hours worked by Plaintiffs' counsel (68.76) by his normal hourly rate of $600 per hour resulting in a fee award of $41,256. *Id* at ¶¶8-9.  In addition, Plaintiffs' counsel has incurred $456.48 in costs associated with the prosecution of this case. *Id* at ¶21.   Thus, the lodestar amount agreed to by the Parties is $41,256 in attorney's fees + $456.48 in costs, for a total of $41,712.48.  As set forth in the Jones Declaration, the number of hours worked on this case was both reasonable and necessary.  In addition, the hourly rate sought by Plaintiffs' Counsel has been approved by many other courts, including the Second Judicial District Court of Nevada, and represents a reasonable hourly rate for similar work performed by attorneys of comparable skill, experience and reputation.  *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979-980 (9th Cir. 2008). See, Jones Decl. ¶¶15-20.

The Ninth Circuit has approved the use of the lodestar method in calculating attorney's fees in collective action cases such as this. *Costa v. Commissioner of Social Sec. Admin.,* 690 F.3d 1132, 1135 (9th Cir. 2012); *Ballen v. City of Redmond,* 466 F.3d 736, 746 (9th Cir.2006); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008).  Under the lodestar method, the district

---

*vacated,* 490 U.S. 1087, 109 S. Ct. 2425, 104 L. Ed. 2d 982 (1989), and *opinion reinstated,* 886 F.2d 235 (9th Cir. 1989)[court awarded $152,284 in attorneys' fees where jury award and $150,000 in damages.]; *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1209 (9th Cir. 2013) [ it is not per se unreasonable for attorneys to receive a fee award that exceeds the amount recovered by their clients].

court "multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Ballen,* 466 F.3d at 746 (internal quotation marks omitted). This "presumptively reasonable fee," known as the lodestar figure, may then in "rare" and "exceptional" cases be "adjusted" on the basis of "other considerations." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564–65, 106 S.Ct. 3088, 3098–99, 92 L.Ed.2d 439 (1985) (quoting in part *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). While district courts have discretion to adjust the presumptively reasonable lodestar figure, this circuit "requires a district court to calculate an award of attorneys' fees by *first* calculating the 'lodestar'" before departing from it. *Caudle v. Bristow Optical Co., Inc.,* 224 F.3d 1014, 1028 (9th Cir.2000) (emphasis added). Although the time spent establishing the entitlement to an amount of fees (preparing and defending a motion for attorney's fees) is also compensable, Plaintiffs' Counsel is not seeking compensation for the work performed after the Parties agreed on the amount of attorney's fees and costs. *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986).

After calculating the presumptively reasonable fee, the district court may then adjust the lodestar upward or downward based on 12 factors. *See Hensley v. Eckerhart,* 461 U.S. at 430 n. 3 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989) (*Johnson's* "list of twelve" thus provides a useful catalog of the many factors considered in assessing the reasonableness of an award of attorney's fees ... ." ); *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 at 70 (9th Cir. 1975) *cert. denied,* 425 U.S. 951, 96 S. Ct. 1726, (1976) (applying *Johnson* factors to FLSA case).

The twelve facts are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with

the client; and (12) awards in similar cases.[7] *See Johnson,* 488 F.2d at 717–19.  These factors are discussed below.

Cases addressing the reasonableness of fee awards uniformly hold that when a Plaintiff has achieved an excellent result, such as here where each Plaintiff will receive 100% of their alleged unpaid overtime plus an equal amount for liquidated damages, the Plaintiff's Attorney should recover the full amount of their lodestar.  Specifically, in *Hensley,* supra, 461 U.S. 424, 435 (1983) the United States Supreme Court held as follows:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified…The result is what matters.

Other cases are in accord. See, *Montanez v. Simon,* 755 F.3d at 553 (7th Cir. 2014)[A Plaintiff who achieves "excellent results" should receive the entire lodestar]; *Lane v. Capital Acquisitions & Mgmt. Co.*, 554 F. Supp. 2d 1345, 1348–49 (S.D. Fla. 2008)["The most important consideration in adjusting a resulting lodestar is the degree of a plaintiff's success in litigation"]; *Dang v. Cross,* 422 F.3d 800, 813 (9th Cir. 2005) [The extent of plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees].  These decisions confirm that Plaintiffs' counsel should receive the full amount of their lodestar in this case.

Of the twelve factors discussed below, the following factors have been deemed to be subsumed in the lodestar calculation and therefore "cannot serve as independent bases for adjusting fee awards: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained." *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 n. 6 (9th Cir. 1987) [citing *Blum,* 465 U.S. at 898–900, 104 S.Ct. at 1548–1549.)] In addition, the Ninth Circuit has also held that the existence of a contingent fee agreement is a subsumed factor.  See, *United States v. $28.000,* 802 F.3d at 1108 (9th Cir. 2015).

Before discussing each of these factors, it is important to note that Plaintiffs are not requesting an upward adjustment to the lodestar.  Instead, Plaintiffs' counsel only seeks the amount

---

[7] These 12 factors are the same as the factors required by L.R. 54-16.

agreed upon by the Parties using a strict lodestar analysis (hourly rate multiplied by hours worked) without a multiplier.  Additionally, an analysis to the twelve factors does not warrant a downward adjustment to Plaintiffs' lodestar.  To the contrary, each of the twelve factors discussed below support the fees requested by Plaintiffs' Counsel.

### 1. Time and Labor Required.

As set forth in the Jones Declaration, 68.76 hours' worth of attorney time was spent litigating this case through the date that the Parties agreed upon the amount to be paid to Counsel. In addition to this amount, Counsel has spent an additional 12.5 hours' worth of work on this case which have been excluded from the lodestar calculation.   The Jones Declaration also includes a synopsis of the type of work completed in this case based on Counsel's time records. Plaintiffs' Counsel submit that the work performed on this case was reasonable, necessary, and directly resulted in a settlement that will pay each Plaintiff 100% of the alleged amount of unpaid overtime, and liquidated damages, owed to them.

### 2. The Novelty And Difficulty Of The Questions And The Skill Requisite to Perform The Legal Services Properly

These factors are deemed to be subsumed in the initial lodestar calculation.  As discussed in the Jones Declaration, Plaintiffs' Counsel is one of only two Plaintiff firms in Northern Nevada that practice complex wage and hour collective action litigation such as is involved in the instant case on behalf of employee-plaintiffs. Jones Decl. ¶¶11, 16.  As this Court can appreciate, litigating this case on behalf of 11 Plaintiffs, as opposed to a single Plaintiff, increased the difficulty of prosecuting this action substantially.  *Id.* at ¶¶12-14.  Further, a collective action case is inherently complex because it requires specialized knowledge and skill in collective action law, procedure, and trial methodology. *Id.* at 11.

### 3. The Preclusion Of Employment By The Attorney Due To Acceptance Of The Case.

This factor is not applicable to this case and does not warrant a downward departure from the lodestar.

### 4. The Customary Fee and Whether the Fee is Fixed or Contingent

To date, Plaintiffs' Counsel has received no payment for the amount of time expended on this case or the out-of-pocket expenses incurred. Further, Plaintiffs' counsel will not receive any contingency fee award from this case as the Parties have negotiated a settlement under which attorney's fees are paid directly to counsel and do <u>not</u> decrease the amount paid to the Plaintiffs.  Moreover, each of the Plaintiffs is aware of the amount that Counsel will be receiving in attorney's fees and has individually consented to the same and signed the settlement agreement. **Exhibit 1**.  In any event, it is well established that the attorney's fee provided for in a contingent-fee agreement is <u>not</u> a ceiling upon the fees recoverable and does <u>not</u> act as a cap on the amount of statutory fees to be awarded. See, *Blanchard v. Bergeron*, 489 U.S. 87, 96, 109 S. Ct. 939, 946, 103 L. Ed. 2d 67 (1989); *Corder v. Gates*, 947 F.2d 374, 377–78 (9th Cir.1991); *United States v. $186,416.00 in U.S. Currency*, 642 F.3d 753, 755 (9th Cir. 2011). As a result, a court "may not rely on a contingency agreement to increase or decrease" the lodestar, *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1048 (9th Cir.2000). *United States v. $28,000.00, supra,* 802 F.3d 1100 at 1108.

Plaintiffs' Counsel assumed a very real risk in taking this case on a contingency basis, investing time, effort, and money in the action with no guarantee of recovery. As discussed in the Jones Declaration, the hourly billing rate of Plaintiffs' Counsel is well within the market rate for contingency fee lawyers of this caliber. *See,* Jones Decl. ¶¶15-20.  In considering the contingent nature of the work performed by Plaintiffs' Counsel, the market rate for such services, as well as the risk involved in the costs and expenses that have been advanced, these factors support the fee award requested. *See Graham v. Daimler Chrysler Corp.,* 34 Cal.4th 553, 580, 101 P.3d 140 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (internal citations omitted).

5.    **Time Limitations Imposed by the Client or the Circumstances**

The time and effort put forth by Plaintiffs' Counsel in this case is discussed above and detailed further in the Jones Decl. at ¶¶8-14.  Here again, this factor does not support a downward adjustment from the lodestar.

### 6.    The Amount Involved and the Results Obtained

Plaintiffs, and their Counsel, are extremely pleased with the result achieved in this case. See, Jones Decl. ¶20.  Specifically, Plaintiffs' Counsel is very pleased with the fact that each of the Plaintiffs will actually recover 100% of the alleged amount of unpaid overtime and liquidated damages owed to them.  Further, as reflected above, the amounts received by the Plaintiffs in this case are significant as several of the Plaintiffs will recover in excess of $10,000 through the negotiated Settlement Agreement.

### 7.    The Experience, Reputation, and Ability of the Attorney.

The qualification and experience of Counsel for Plaintiffs is set forth in detail in the Jones Decl. at ¶¶3-7, 19.  In *Johnson*, *supra*, 488 F.2d at 718-19, the court noted that an attorney who specializes in a particular area of law "may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience." Briefly, Counsel are experienced in complex wage and hour cases such as the instant case and are one of only two firms in this jurisdiction who handle such cases.  *Id.*   In addition to obtaining several settlements in complex class and collective action cases such as this, Plaintiffs' Counsel have been involved in several cases which helped shape the law relating to class and collective actions. *Id.*  Plaintiffs submit that these cases discussed in the Jones Declaration at ¶¶3-7, 19, speak to the experience, reputation and ability of Plaintiffs' Counsel.

### 8.    The Undesirability of the Case

This factor is not applicable.

### 9.    The Nature and Length of the Professional Relationship with the Client

Plaintiffs' Counsel has represented the Plaintiffs in this action since early May of 2017.

### 10.    Awards in Similar Cases

Regarding the reasonableness of the hourly rate sought by Plaintiffs' Counsel in this case, in *Sargant v. H.G. Staffing* , Case No. 3:13-cv-00453 LRH-WGC (D. Nev. 2014), the Honorable Magistrate Judge William Cobb ascertained the hourly rate for one of my colleagues, attorney Mark Thierman, by analogizing to my hourly rate of $600 an hour, which Magistrate Cobb found to "provide a reasonable comparable rate pertinent to the District of Nevada." See, Ex. 3. By doing so, the Court acknowledged the reasonableness of the rate of Plaintiffs' Counsel here. In addition to the *Sargant* case, the undersigned has been awarded $600 an hour, or more, in a number of recent decisions, including one from the Second Judicial District Court of Nevada in *Rauenzahn v. Corgenix Medical Corporation*, (Second Judicial Case No. CV-14-01907). See, Jones Decl. ¶17.

## V.    CONCLUSION

Counsel for the Parties committed substantial amounts of time, energy, and resources litigating and ultimately settling this case. In the judgment of the Parties, the proposed Settlement Agreement is a fair, reasonable, and adequate compromise of the issues in dispute in light of the strengths and weaknesses of each Party's case. Moreover, after weighing the substantial, certain, and immediate benefit of this settlement against the uncertainty of trial and appeal, the Parties believe that the proposed Settlement Agreement is fair, reasonable and adequate, and in their best interests. Accordingly, the Parties respectfully request the Court approve the attached proposed Settlement Approval Order which (i) grants approval of the proposed Settlement, (ii) certifies the Collective Action for settlement purposes only, and (iii) and dismisses this action with prejudice.

**IT IS SO STIPULATED**:

DATED this 7th day of March, 2018.                    DATED this 7th day of March, 2018.


/s/ Charles A. Jones                                         /s/ F. McClure Wallace
Charles A. Jones, Esq.                                     F. McClure Wallace, Esq.
Kelly McInerney, Esq.                                      Patrick Millsap, Esq.
Jones Law Firm                                             Wallace & Millsap LLC
9585 Prototype Court, Suite B.                            510 West Plumb Lane, Suite A
Reno, Nevada 89521                                        Reno, Nevada 89509
Telephone: (775) 853-6440                               Telephone: (775) 683-9599
Facsimile: (775) 853-6445                               Facsimile: (775) 683-9597
*Attorneys for Plaintiffs*                                 *Attorneys for Defendant*